Gregory Alan Rutchik, Esq. (SBN 195423)
IDELL, BERMAN, SEITEL & RUTCHIK, LLP
the arts and technology law group
465 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259
Email: gregory@rutchik.com

Roy S. Gordet (SBN 103916)
Attorney at Law
98 Battery Street, Suite 601
San Francisco, CA 94111
Telephone: 415-627-0300
Facsimile: 415-627-9020
Email: roy@gordetlaw.com

Attorneys for Jupiter Hosting, Inc., a Delaware corporation

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jupiter Hosting, Inc., a Delaware Corporation, | Case No. 04-1820 CW |
| Plaintiff, | |
| v. | **JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER DISCOVERY RESPONSES** |
| Jupitermedia Corporation, a Delaware Corporation, | |
| Defendant. | **Date: June 24, 2005**<br>**Time: 10:00 AM**<br>**Location: TBD**<br>**Honorable U.S. Magistrate Judge Assigned by**<br>**Honorable U.S. Magistrate Judge Presiding**<br>**Trial Date: January 23, 2005** |

**Cases**

*Detoy v. San Francisco*, 196 F.R.D. 362, 2000 U.S. Dist. LEXIS 13013 (**5)..........................16

*King v. Pratt v. Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995) ......................................................17

*United States v. Taylor* (MD NC 1996) 166 FRD 196, 201 ....................................................16

**Rules**

Fed. R. Civ. Pro 26(a)..............................................................................................................15

Fed. R. Civ. Pro 30(b)(6) ..... ...................................................................................................16

Fed. R. Civ. Pro. 26(a)(1)(B) ..................................................................................................15

Fed. R. Civ. Pro. 26(a)(1)(C) ..............................................................................................15, 19

Fed. R. Civ. Pro. 26(a), 30, 33 and 34....................................................................................14

Fed. R. Civ. Pro. 26(b)(1) ........................................................................................................16

Fed. R. Civ. Pro. 26(g)............................................................................................................16

Fed. R. Civ. Pro. 30(b)(6) ..............................................................................................7, 8, 17

Fed. R. Civ. Pro. 30(d)(1) ..........................................................................................................5

Fed. R. Civ. Pro. 30(d)(4) ..........................................................................................................9

Fed. R. Civ. Pro. 34(b)..............................................................................................................14

Fed. R. Civ. Pro. 37 ....................................................................................................................7

Fed. R. Civ. Pro. 37(a)(2)(B) ....................................................................................................16

Fed. R. Civ. Pro. 37(c)(1)..........................................................................................................15

Local Rule 26-2 ..........................................................................................................................6

Local Rule 37-1 ..........................................................................................................................7

Local Rule 37-1(a)......................................................................................................................7

Local Rule 37-2 ........................................................................................................................16

Local Rule 37-3 ........................................................................................................................21

**Treatises**

7-30 <u>Moore's Federal Practice – Civil</u> §30.20 (ii) ....................................................................8

Schawzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial*, The Rutter Group, §11:341 (2005) ........................................................................................................................... 15

Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (The Rutter Group) ¶11:1414.1 .............................................................................................................................. 16

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION.

Discovery procedures under the Federal Rules of Civil Procedure are an essential tool to assist the parties and the Court get to the bottom of a party's claims.  Jupitermedia has attempted to thwart Jupiter Hosting's right to obtain discovery at every turn.  One of the worst types of discovery abuses is designating a witness for deposition who is intentionally or otherwise unprepared.  Jupitermedia has crossed the line of mere advocacy and strategy; Jupitermedia has abused the discovery process.  Jupitermedia should not be allowed to allege damages from trademark infringement and hide behind a designated 30(b)(6) witness and ambiguous discovery responses.  Jupiter Hosting has the right to know what specific damages Jupitermedia asserts against it and, in this case of trademark infringement, to learn as much as possible about the strength of Jupitermedia's trademark claim.  Jupitermedia should be compelled to designate a new, knowledgeable witness for a 30(b)(6) deposition and to produce any and all trademark license agreements with third parties that Jupitermedia identified for the first time in its 30(b)(6) deposition pursuant to Jupiter Hosting's Request for Production of Documents, Set 1, No. 13.  Jupiter Hosting has the right to Jupitermedia's responses, and a new deposition would aid the Court in obtaining relevant and admissible evidence necessary to adjudicate this matter.

Jupiter Hosting is defending itself against allegations by Jupitermedia that Jupiter Hosting infringes Jupitermedia's trademark to the term "JUPITER."  Jupitermedia's allegations rest on whether Jupiter Hosting's use of "JUPITER" creates a "likelihood of confusion" under the Lanham Act with any trademark of Jupitermedia and whether Jupitermedia is entitled to any damages resulting.  On November 9, 2004, Jupitermedia's Motion for Preliminary Injunction was denied by this Court because, *inter alia* (1) there are "several dozen companies in California and several dozen more in New York that use the mark 'Jupiter'… many of which advertise and/or provide services relating to the Internet" (Order 8:19-23); (2) there is "no real evidence of actual confusion on the part of consumers other than several telephone calls to defendant inquiring about services similar to those offered by Plaintiff" (Order 10:13-14; and (3) "Defendant's own moving papers suggest that it has not been injured by Plaintiff's use of the mark "Jupiter Hosting…";" "it appears from its moving papers that it has flourished during the time that

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 4

1 | Plaintiff has utilized the mark 'Jupiter Hosting'." (Order 13:10-11; 19-20). Jupitermedia has also

2 | brought claims under the Anti-Cybersquatting Consumer Protection Act and Unfair Competition, which

3 | as this Court concluded in its denial of Jupitermedia's motion for preliminary injunction, appear to rest

4 | solely on the success of Jupitermedia's "likelihood of confusion" argument under the Lanham Act.

5 | (Order 14:6-8).

6 | Despite the Court's order denying Jupitermedia's Motion for Preliminary Injunction,

7 | Jupitermedia stands resolute that that Jupiter Hosting has damaged its reputation and the value of its

8 | trademarks, and Jupitermedia claims that use of the term "JUPITER" by even the likes of Microsoft

9 | does not require explanation. To inquire into these matters, Jupiter Hosting noticed Jupitermedia's

10 | 30(b)(6) deposition and listed many items with reasonable particularity that go to the heart of this

11 | matter. Jupitermedia's Fed. R. Civ. Pro. 30(b)(6) witness, Vice President and General Counsel, Mitchell

12 | Eisenberg, did not prepare for many of the items noticed, repeatedly "did not know" the answers to

13 | questions, and was continually interrupted by counsel's lengthy, non-concise, argumentative and

14 | suggestive objections in violation of Fed. R. Civ. Pro. 30(d)(1).

15 | All of this can, however, be easily cured by compelling Jupitermedia to produce the third-party

16 | trademark licenses and to designate a new witness pursuant to 30(b)(6). Jupiter Hosting immediately

17 | asked Jupitermedia to designate a new witness when it was obvious that Mr. Eisenberg was unprepared

18 | and not knowledgeable about the topics as in the notice of deposition. Jupitermedia refused (72:8;

19 | 137:13 – 138:10). The Court should grant Jupiter Hosting's Motion to Compel Further Responses to

20 | 30(b)(6) Deposition and Request for Production of Documents, Set 1 to aid the Court and Jupiter

21 | Hosting get to the bottom of Jupitermedia's allegations so that this matter can be properly adjudicated.

22 | The deposition should occur in San Francisco or Oakland so that any dispute can be readily addressed

23 | by the Court.

24 | **II.   STATEMENT OF ISSUES:**

25 | 1. Whether Jupitermedia Corporation should be compelled to designate a witness or
26 | witnesses knowledgeable on Topics Nos. 11, 17, 25, 32, 33, 34, 37 and 38 as stated in
   | Jupiter Hosting's Notice of Deposition to Jupitermedia Corporation;

27 | 2. Whether Jupitermedia Corporation should be compelled to produce the above-described
28 | witness for deposition by Jupiter Hosting in the Northern District of California;

the arts
and
technology
law group

3. Whether Jupitermedia Corporation should be compelled to produce all documents that compute or evidence its damage claims pursuant to Fed. R. Civ. Pro. 26(a)(1)(C); and

4. Whether Jupitermedia Corporation should be compelled to produce all license agreements for any Jupitermedia trademark that Jupitermedia or its predecessors have entered into with a third party and all other communications in response to Jupiter Hosting's Request for Documents No. 13.

## III.   FACTS AND BACKGROUND OF CASE AND PROCEDURAL HISTORY

### A.   Procedural History

After finding out about Jupiter Hosting's use of the mark "JUPITER HOSTING" when Jupiter Hosting filed its federal trademark application on January 24, 2004, Jupitermedia's in-house counsel sent a cease and desist letter to Jupiter Hosting on March 12, 2004. On April 1, 2004, Jupiter Hosting responded, asserting that no likelihood of confusion existed, and on April 7, 2004, Jupitermedia's outside counsel sent a response to Jupiter Hosting. On May 10, 2004, Jupiter Hosting filed an action for declaratory judgment to seek a determination, among other things, that its continued use of the service mark "JUPITER HOSTING" does not infringe Defendant Jupitermedia's rights under the Lanham Act. On July 16, 2004, Jupitermedia filed a Motion for Preliminary Injunction to ask the court to "require Jupiter Hosting to transfer the www.jupiterhosting.com domain name to Jupitermedia and to enjoin Jupiter Hosting preliminarily from using the term 'JUPITER HOSTING' with its services pending the outcome of a trial." (MPI, p.3) Pursuant to an order of this Court, on August 11 and 12, 2004, Jupiter Hosting took the depositions of Jupitermedia's declarants in support of its Motion for Preliminary Injunction, Mitchell Eisenberg, David Schatsky and Michael DeMilt.

On November 11, 2004, this Court denied Jupitermedia's motion. Jupiter Hosting took the deposition of Jupitermedia Corporation pursuant to Fed. R. Civ. Pro. 30(b)(6) on April 18, 2005 (the Notice of Deposition is attached to the Declaration of Gregory Alan Rutchik in Support of Jupiter Hosting's Motion to Compel (hereinafter, "Rutchik Decl.") as Attachment A). The cut-off for fact discovery in this case was May 13, 2005, and the last date to move to compel further responses to discovery is May 20, 2005 pursuant to Local Rule 26-2. The jury trial in this case is set for January 23, 2006.

### B.   FACTS RELATING TO THIS DISCOVERY MOTION

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 6

1

### 1. MOTION TO COMPEL IS APPROPRIATE HERE

2   Pursuant to Fed. R. Civ. Pro. 37 and Local Rule 37-1, a motion to compel is appropriate when the

3   parties have previously conferred for the purpose of attempting to resolve the disputed issues. Jupiter

4   Hosting has asked Jupitermedia to cure the defect caused by designating a witness without knowledge of

5   the topics in the notice of deposition, but Jupitermedia has refused. Jupitermedia did appear to offer

6   Jupiter Hosting the right to re-take the 30(b)(6) deposition, but only if Jupiter Hosting's counsel stopped

7   its "abusive" deposition behavior (See Rutchik Decl. ¶10, Exhibit J). Jupitermedia's offer implies that

8   Jupiter Hosting's counsel exhibited unprofessional behavior, which is untrue and completely unfounded.

9   Jupiter Hosting's questions and questioning style was wholly appropriate and speaks for itself. Rather

10  than waste the Court's time here responding to Jupitermedia's petty allegations, counsel for Jupiter

11  Hosting sets out a response to Jupitermedia's characterization of his deposition questions in the attached

12  declaration. (Rutchik Decl. ¶11–15). The Court should allow Jupiter Hosting to re-take Jupitermedia's

13  30(b)(6) deposition solely on the topics specified in this Motion here in the Northern District of

14  California so that Jupitermedia's deposition can occur under the watchful eye of this Court.

15

16

### 2. JUPITER HOSTING HAS MADE A GOOD-FAITH ATTEMPT TO MEET AND CONFER REGARDING DESIGNATION OF A NEW WITNESS TO TESTIFY ON BEHALF OF JUPITERMEDIA CORPORATION.

17  Pursuant to Local Rule 37-1(a), Jupiter Hosting has made a good-faith attempt to meet and confer

18  with Jupitermedia regarding designation of an appropriate 30(b)(6) witness. On May 3, 2005, Jupiter

19  Hosting sent a meet and confer letter to Jupitermedia regarding various discovery issues (Exhibit I to

20  Rutchik Decl.), which specifically requested that Jupitermedia designate a witness who was prepared to

21  testify on topics about which its previous designee, Mitchell Eisenberg, was not knowledgeable.

22  Jupitermedia replied on May 10, 2005 and flatly refused to designate another witness or witnesses

23  (Exhibit J to Rutchik Decl.).

24

### 3. JUPITER HOSTING PROPERLY NOTICED JUPITEMEDIA'S 30(B)(6) DEPOSITION.

25  On March 7, 2005, Jupiter Hosting sent the Notice of Deposition of Jupitermedia

26  Corporation pursuant to 30(b)(6) to Jupitermedia so that the parties could meet and confer regarding the

27  date of the deposition (Exhibit B to Rutchik Decl.). Pursuant to Fed. R. Civ. Pro. 30(b)(6), Jupiter

28  Hosting named defendant Jupitermedia Corporation as the deponent and described matters with

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 7

1 reasonable particularity on which examination was requested. Jupiter Hosting received no response
2 from Jupitermedia.

3    On March 18, 2005, Jupiter Hosting's counsel sent another facsimile to Jupitermedia
4 Corporation to set the date of the 30(b)(6) Deposition of Jupitermedia Corporation, as Jupiter Hosting
5 had not received any correspondence from Jupitermedia (Exhibit C to Rutchik Decl.). On March 22,
6 2005, Jupiter Hosting's counsel received a letter from Jupitermedia's counsel that indicated that
7 Jupitermedia "intend[ed] to serve objections" to Jupiter Hosting's notice (Exhibit D to Rutchik Decl.).
8 On March 28, 2005, Jupiter Hosting's counsel responded to Jupitermedia's March 22, 2005 letter and
9 reminded Jupitermedia that it had not provided specific objections to Jupiter Hosting's deposition notice
10 (Exhibit E to Rutchik Decl.). On March 29, 2005, Jupiter Hosting's counsel received a letter from
11 Jupitermedia that set forth three "illustrative" examples of matters specified in Jupiter Hosting's
12 deposition notice that Jupitermedia found to be "overbroad" and "vague" (Exhibit F to Rutchik Decl.).
13 However, these examples provided no guidance as to which topics Jupitermedia wanted Jupiter Hosting
14 to "narrow" and in what ways. In fact, only three of the 47 topics are specifically referenced in the letter
15 (i.e., topics 23[1], 41[2] and 42[3]). On March 30, 2005, Jupiter Hosting responded to Jupitermedia and
16 asserted that none of those topics is overbroad or vague, but agreed to narrow Topic 23 to include only
17 those trademarks that contain the term "JUPITER" (Exhibit G to Rutchik Decl.). Jupitermedia did not
18 respond to Jupiter Hosting's March 30, 2005 letter.

19    The deposition was originally noticed to take place in San Francisco. Under Fed. R. Civ. Pro.
20 30(b)(6), Jupiter Hosting took the position that because Jupitermedia filed its Motion for Preliminary
21 Injunction its counterclaims in the Northern District, it was proper for Jupiter Hosting to notice the
22 deposition of Jupitermedia here. The Federal Rules dictate that "if the party deposed is a plaintiff, or its
23 agent, deposition is generally appropriate at the litigation forum." 7-30 Moore's Federal Practice – Civil
24 §30.20 (ii) fn. 8. "A corporate defendant who files a permissive counterclaim may be deposed at the

25
[1] Jupitermedia's monitoring of any and all trademarks owned by Jupitermedia
26 [2] All responses served by Jupitermedia Corporation on Jupiter Hosting to discovery propounded to Jupitermedia Corporation,
including but not limited to Jupiter Hosting's Request for Production of Documents, Set 1 and Special Interrogatories, Set 1
27 [3] All documents served by Jupitermedia Corporation on Jupiter Hosting in response to discovery propounded to Jupitermedia
Corporation, including but not limited to Jupiter Hosting's Request for Production of Documents, Set 1, Jupiter Hosting's
28 Request for Production of Documents, Set 2 and Special Interrogatories, Set 1

the arts
and
technology
law group

1   place of trial." *Id*. Jupitermedia, the counterclaimant in this matter, is to be treated as a plaintiff, and the

2   proper location for its deposition is in this forum in the Northern District. Jupiter Hosting's sole purpose

3   for taking this deposition was to defend against the significant counterclaims brought in this forum by

4   Jupitermedia. Because Jupitermedia chose this forum to file its permissive counterclaim as clearly

5   stated in its answer and counterclaim, Jupitermedia would have been required to make its officers

6   available here for the 30(b)(6) deposition. Jupiter Hosting also believed that there was a high likelihood

7   that discovery disputes would occur during the deposition and the process would be benefited by

8   conducting the deposition here, in the same time zone as the Court.

9          However, at Jupitermedia's insistence, Jupiter Hosting agreed to take the 30(b)(6) deposition in

10  New York City rather than in San Francisco as originally noticed. Although this forced Jupiter Hosting

11  to incur extra costs for travel expenses of its counsel, Jupiter Hosting agreed to take the deposition in

12  New York as a courtesy to Jupitermedia Corporation and to move the discovery process forward.

13         Jupitermedia had ample time to meet and confer with Jupiter Hosting on the deposition topics

14  and, if it saw fit, move for a protective order limiting the scope of deposition topics. However,

15  Jupitermedia did neither. Jupitermedia takes the position now that Jupitermedia was not required to

16  move for a protective order despite Fed. R. Civ. Pro. 30(d)(4). Rather, Jupitermedia served broad

17  objections to Jupiter Hosting's Notice of Deposition, failed to meet and confer with Jupiter Hosting to

18  clarify the objections and did not file a motion for a protective order. Finally, Jupitermedia showed up

19  at its 30(b)(6) deposition with a witness who admitted that he did little more than read his own prior

20  declaration and the pleadings, and speak to one or two individuals to prepare for Jupitermedia's

21  deposition. To date, Jupitermedia has not served objections to the deposition notice on Jupiter Hosting,

22  nor has it made any attempt to meet and confer with regard to each specific deposition topic it would

23  like to narrow or change. These actions hardly fall within permissible discovery procedure under the

24  Federal Rules.

25         **4. JUPITERMEDIA INTENTIONALLY FAILED TO DESIGNATE A KNOWLEDGEABLE WITNESS TO**
           **TESTIFY AT ITS FED. R. CIV. PRO. 30(B)(6) DEPOSITION.**

26         Jupitermedia designated its general counsel, Mitchell Eisenberg, to appear to testify on behalf of

27  the corporation on April 18, 2005 in New York City. To start things off, Mr. Mark Mutterperl,

28  appearing on behalf of Jupitermedia Corporation, attempted to qualify the deposition by stating that the

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 9

witness may not be able to address certain questions on the topics as provided.[4]  Mr. Eisenberg, however, testified that he was the individual designated to testify on all topics noticed "to the extent I can" (see fn 4).  It was immediately evident that the extent of Mr. Eisenberg's knowledge was quite limited.  When Mr. Eisenberg was asked basic questions about the value of Jupitermedia's marks and causes of their increase or decrease, Mr. Eisenberg did not know and did not adequately prepare to testify on that topic (e.g., 95:3–98:14).  Mr. Eisenberg's responses to questions about the damages Jupitermedia is claiming in this litigation went largely unanswered because Mr. Eisenberg did not know about the topic, did not speak to anyone at Jupitermedia to prepare to testify on damages, and insisted that his answer of not knowing was a sufficient answer (e.g., 62:22–63:15).  On the critical questions related to correspondence with two third parties, including Microsoft, to which Jupitermedia sent cease and desist letters, Mr. Eisenberg was not able to give a substantive response (see fn 8).  Further, Mr. Eisenberg did not have any specific information about the vast majority of third parties that use "JUPITER" referred to by Jupiter Hosting in its pleadings, and thus had little substantive information as to Jupitermedia's view of the crowded field of JUPITER marks (e.g., 363:6–20).

The specific topics that Mitchell Eisenberg stated he was unable to testify to included, but were not limited to the following:[5]

- Topic 11, Value of Jupitermedia's Marks and any increase or decrease thereto, and causes of such increases or decreases[6]



**Filed under Seal**

- Topic 17, Jupitermedia's evidence of actual confusion between Jupitermedia and Jupiter Hosting[7]

- Topic 25, Communications between Jupitermedia and any third party regarding Jupiter Hosting including specifically third parties that use the term "Jupiter" in their business, product or service name[8]

- Topic 32, Details of all damages, including but not limited to actual dollar amount and type, to date suffered by Jupitermedia as a result of Jupiter Hosting's actions[9] (see also fn 5)

- Topic 33, Details of all damages, including but not limited to actual dollar amount and type, with regard to Jupitermedia's reputation and good will due to Jupiter Hosting's actions (see fn 8)

- Topic 34, The effect of each reference identified in Nikia Pinkney's Declaration, Exs. 1-29 on the strength of the "Jupitermedia Marks" (as such term is defined in Jupitermedia's Answer and Counterclaim in this matter at paragraph 2)[10]

**Filed under Seal**

- Topic 35, Steps taken by Jupitermedia to assert trademark rights against third parties including those identified in the Nikia Pinkney Declaration, Ex. 1-29 (see fn 9)

- Topic 37, Details of all damages, including but not limited to actual dollar amount and type, that Jupitermedia alleges Jupitermedia is "entitled to recover" in Jupitermedia's Answer and Counterclaim in this matter (see fn 5, 8)

- Topic 38, Any license agreements for use of any trademark owned by Jupitermedia between Jupitermedia and a third party[11] (see also fn 7)

### 5. JUPITERMEDIA HAS FAILED TO PRODUCE THIRD-PARTY LICENSE AGREEMENTS.

As a part of its first set of Requests for Production of Documents, Jupiter Hosting propounded the following request on Jupitermedia, and Jupitermedia responded as follows:

### DOCUMENT REQUEST NO. 13:

ALL COMMUNICATIONS between Jupitermedia and ANY third party regarding use of JUPITER as a trademark.

### RESPONSE TO DOCUMENT REQUEST NO. 13:

Jupitermedia incorporates each of its General Objections a though fully stated herein. Jupitermedia further objects to the Request on the ground that it is over broad, unduly burdensome and oppressive. Jupitermedia further objects to the Request on the ground that the phrase "use of JUPITER as a trademark" is vague. Jupitermedia further objects to this Request to the extent that it purports to invade the protections afforded by the attorney-client privilege and/or work-product doctrine and requests the disclosure of proprietary and/or confidential business information and strategy, trade secrets, or other information fundamental to Jupitermedia's business. Subject to and without waiving the foregoing objections, Jupitermedia

**Filed under Seal**

the arts
and
technology
law group

1   responds that it will produce non-privileged documents in its possession, custody or control, if

2   any, responsive to this Request.

3

4        Jupiter Hosting has since learned that Jupitermedia's response was not accurate or complete.

5   To date, Jupitermedia has produced sparce correspondence with two entities regarding their use of

6   "JUPITER" as a trademark: Jupiter Media and Sales, an Ohio company, and Microsoft Corporation.

7   However, during the 30(b)(6) deposition of Jupitermedia Corporation, Mitchell Eisenberg testified that

8   Jupitermedia "possibly" has "thousands of license agreements" with third parties regarding its

9   trademarks (see fn 8). If that is the case, those license agreements clearly fall within the scope of

10  Document Request No. 13, and they should be produced. The designated witness stated specifically that

11  with regard to any license agreements with Microsoft, it would be straightforward for him to investigate

12  whether or not Jupitermedia possessed an agreement (see fn 4). Jupiter Hosting asked Jupitermedia to

13  produce the license agreements with third parties because it is critical to know whether or not

14  Jupitermedia has properly exercised control over its trademarks. Jupitermedia failed to respond, stating

15  that it did "not understand" Jupiter Hosting's claim that it had not produced all documents pursuant to

16  Request No. 13 (Exhibit J to Rutchik Decl.). It is quite possible that Jupitermedia has not exercised

17  proper control over its marks. For example, Jupiter Hosting asked Mr. Eisenberg if he was the

18  designated witness to testify on Jupitermedia and its predecessors' marks (209:10-16). Mr. Eisenberg

19  said that he was, yet he insisted Jupitermedia never wrote to Jupiter Systems (274:4). Throughout this

20  litigation, Jupitermedia repeatedly said that it never wrote to or communicated with Jupiter Systems,

21  owner of the mark JUPITER (Reg. No. 1275937) and the domain name Jupiter.com. Jupiter Systems, in

22  its recent deposition, testified that Jupiter Communications, a predecessor of Jupitermedia, repeatedly

23  requested to buy the Jupiter.com domain name but was rejected. Jupiter Communications never asked

24  Jupiter Systems to stop using the term "JUPITER," despite the fact that Jupiter Systems is a nationally

25  recognized computer display manufacturer that has been in business since the early 1980's. Rather,

26  Jupiter Communications sought and received a link on Jupiter Systems' Web site so that those who had

27  already written to Jupiter Systems thinking it was Jupiter Communications could find Jupiter

28  Communications more easily. Jupitermedia did not produce these documents; Jupiter Hosting was

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 13

1  forced to take the deposition of Jupiter Systems to discover this fact. If Jupitermedia produces the other

2  "thousands" of license agreements, there may be other important facts related to Jupitermedia's

3  trademarks that are helpful to this Court in adjudicating this matter. Jupiter Hosting should be entitled to

4  those documents and then to re-take Jupitermedia's 30(b)(6) deposition to inquire as to how

5  Jupitermedia has licensed out its trademark rights, if it has, and whether or not Jupitermedia properly

6  exercises control over its trademarks. If Jupitermedia has not exercised proper control, it will be a fatal

7  blow to Jupitermedia's claims against Jupiter Hosting. Jupiter Hosting has the right to know the answer

8  to this question, and it would aid the Court in adjudicating this matter.

9      Originally, rather than propound even more written discovery on Jupitermedia, Jupiter Hosting

10  sought to take Jupitermedia's 30(b)(6) deposition in the hopes that complete responses could be

11  obtained. Jupiter Hosting carefully crafted a Notice of Deposition of Jupitermedia Corporation pursuant

12  to 30(b)(6) with numerous items set forth with reasonable particularity so that it could properly defend

13  the allegations made by Jupitermedia. Then, Jupitermedia intentionally failed to designate a witness

14  who was knowledgeable about the topics listed in the notice of deposition. As a result, Jupiter Hosting

15  was not able to obtain the information to which it is entitled about Jupitermedia's communications and

16  license agreements with third parties regarding trademark use of JUPITER.

17      The only way to cure this defect is to permit Jupiter Hosting to re-depose Jupitermedia, to

18  compel Jupitermedia to designate a knowledgeable witness and to compel Jupitermedia to produce the

19  documents that it has withheld pursuant to Fed. R. Civ. Pro. 34(b).

20              **6. JUPITERMEDIA HAS STONEWALLED DISCOVERY EFFORTS FROM THE BEGINNING.**

21      Jupitermedia's tactics at the deposition were not new. Jupitermedia has repeatedly stonewalled

22  discovery every step of the way and has failed to comply with the requirements of Fed. R. Civ. Pro.

23  26(a), 30, 33 and 34. Rather than file a motion to cure each individual instance of discovery abuse,

24  Jupiter Hosting believes that re-deposition of Jupitermedia and an order to produce specific documents

25  could cure this non-compliance. There are two key elements of this litigation about which Jupiter

26  Hosting has sought discovery and Jupitermedia has failed to produce adequate responses: (1) damages

27  claimed by Jupitermedia, and (2) the strength of Jupitermedia's marks, which is strongly affected by

28

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 14

both (a) license agreements between Jupitermedia and any third party regarding the use of its

"JUPITER" trademarks and (b) the crowded field of JUPITER marks.

### a.  JUPITERMEDIA HAS FAILED TO COMPLY WITH FED. R. CIV. PRO 26(A) AND EVIDENCE OF DAMAGES SHOULD BE PRECLUDED

Jupitermedia did not produce <u>a single document</u> with its Initial Disclosures, and has failed to

produce a single document that supports it calculation of damages pursuant to Fed. R. Civ. Pro

26(a)(1)(C).  In its Initial Disclosures, Jupitermedia claimed in its initial disclosures that it sought

"damages from infringement and dilution according to proof" (Rutchik Decl. ¶16, Exhibit K p. 4).

Jupiter Hosting had to propound document requests to Jupitermedia that asked for all documents

identified in its Initial Disclosures, in response to which Jupitermedia still did not produce a single

document related to damages.  When Jupiter Hosting informed Jupitermedia of  its failure to produce

documents that set out its damage computation as required by Fed. R. Civ. Pro. 26(a)(1)(C), still no

documents regarding computation of damages were produced.

Fed. R. Civ. Pro. 26(?)(1)(C) explicitly requires the production of documents or other evidentiary

material that sets for a computation of any category of damages, and not merely a "description by

category" as under Fed. R. Civ. Pro. 26(a)(1)(B).  Jupitermedia took the position with all of its Initial

Disclosures that describing the category of documents was enough.  Because Jupitermedia is

withholding and/or failing to produce documentary computations and evidence of Jupitermedia's

damages, Jupiter Hosting is prevented from knowing Jupitermedia's precise claims.  Because

Jupitermedia's withholding of these documents is very harmful, it appears that the Court must impose

the sanction of evidence preclusion pursuant to Fed. R. Civ. Pro. 37(c)(1).  See e.g. Schawzer, Tashima

& Wagstaffe, *Federal Civil Procedure Before Trial*, The Rutter Group, §11:341 (2005).

### b.  JUPITERMEDIA HAS FAILED TO COMPLY WITH FED. R. CIV. PRO 33 AND ANSWER INTERROGATORIES REGARDING ITS DAMAGE CLAIMS.

Jupitermedia responded to Jupiter Hosting's interrogatories regarding its damage claims by

stating, in part, that it "has not yet obtained in discovery any information from Jupiter Hosting as to its

sales activities and therefore has not yet been able to calculate the financial gain Jupiter Hosting has

received as a result of its wrongful conduct" (Exhibit L to Rutchik Decl., p. 34).  However, Jupitermedia

has not supplemented its responses and has failed to provide any details regarding its calculation of

the arts
and
technology
law group

JUPITER HOSTING'S MOTION TO COMPEL JUPITERMEDIA CORPORATION TO PROVIDE FURTHER
DISCOVERY RESPONSES, SET 1 - 15

1    damages. Again, to cure this problem, Jupiter Hosting asks this Court, at the very least, to compel

2    Jupitermedia to designate a witness who has knowledge of Jupitermedia's damage claims.

3    ## IV.   ARGUMENT

4          Pursuant to Fed. R. Civ. Pro. 37(a)(2)(B) and Local Rule 37-2, Jupiter Hosting moves to compel

5    Jupitermedia's designation of a witness is knowledgeable as to the following topics as set forth in Jupiter

6    Hosting's Notice of Deposition of Jupitermedia Corporation pursuant to 30(b)(6): Topics Nos. 11, 17,

7    25, 32, 33, 34, 37 and 38.

8          **A.     DEFENDANTS DID NOT DESIGNATE A PROPER WITNESS UNDER 30(b)(6).**

9          Jupitermedia has an obligation, pursuant to Fed. R. Civ. Pro 30(b)(6), to produce a witness who

10   has knowledge of matters described in the notice of deposition.

11         The Federal Rules require that the person designated must have knowledge of matters described

12   in the notice, and the company has a duty to prepare the designated person. If there is no such witness,

13   the corporation has a duty to prepare a representative to testify. *United States v. Taylor* (MD NC 1996)

14   166 FRD 196, 201.

15         It is well established law in the Northern District that the designation of a deponent with limited

16   knowledge of matters described in the notice (either intentionally or otherwise) is improper and the

17   designation of a witness who lacks knowledge of the matters specified in the notice will entitle Jupiter

18   Hosting to seek the reimbursement of expenses incurred in taking the deposition including reasonable

19   attorneys' fees. See Fed. R. Civ. Pro. 26(g) and Schwarzer, Tashima & Wagstaffe, *Federal Civil*

20   *Procedure Before Trial* (The Rutter Group) ¶11:1414.1.

21         Indeed, when the categories of information sought under a 30(b)(6) deposition are essential to

22   the deposing party's causes of action, the deponent must designate witnesses who are knowledgeable

23   about that information and "ensure that such witnesses are adequately prepared to testify, that is, that

24   each witness has reviewed all pertinent documents and is familiar with them." *Detoy v. San Francisco*,

25   196 F.R.D. 362, 2000 U.S. Dist. LEXIS 13013 (**5). Each and every topic noticed by Jupiter Hosting

26   was noticed with reasonable particularity and is well within the liberal discovery requirements of Fed. R.

27   Civ. Pro. 26(b)(1) which states that "parties may obtain discovery regarding any matter, not privileged,

28   which is relevant to the subject matter involved in the pending action." Jupitermedia intentionally failed

the arts
and
technology
law group

1  to produce a knowledgeable witness, failed to prepare its witness and failed to produce a witness who

2  had reviewed the pertinent documents.

3       If there is any dispute as to the topics identified in the notice of deposition, the party deposed

4  must move for a protective order to narrow the scope of the notice.  If the deposed party does not move

5  for a protective order, it must designate a representative who can answer questions on all topics as stated

6  in the notice.  Jupitermedia's blanket objection to the deposition topics as "overbroad" and "vague" is

7  merely a tactic to divert the Court's attention from its obligations under Fed. R. Civ. Pro. 30(b)(6).

8  Jupitermedia's repetitive objections during the deposition that questions were beyond the scope of the

9  notice is further obfuscation.  It is well established in this Circuit that (1) the scope of the deposition in

10  the notice is the minimum about which the witness must be prepared to testify, not the maximum; (2) if

11  the designated deponent cannot answer those questions identified, then the entity has failed to comply

12  with its Rule 30(b)(6) obligations and may be subject to sanctions; and (3) if the examining party asks

13  questions outside the scope of the matters described (and Jupiter Hosting does not agree that it did), the

14  general deposition rules (i.e., Fed. R. Civ. P. 26(b)(1)) govern so that relevant questions may be asked

15  and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed.

16  *Id.* at **10 quoting *King v. Pratt v. Whitney*, 161 F.R.D. 475 (S.D. Fla. 1995).  Jupiter Hosting concedes

17  that if a question were asked beyond the scope of the Notice, and none were, it is Jupiter Hosting's

18  problem if the deponent does not know the answer.  Here, Jupitermedia's designated witness did not

19  know many of the items properly noticed, which is Jupitermedia's problem.

20       If Jupitermedia wished to narrow the deposition topics, it should have made a good faith attempt

21  to meet and confer with Jupiter Hosting.  If that was unsuccessful, Jupitermedia should have filed a

22  motion for protective order to narrow the deposition topics.  Jupitermedia did not meet and confer, nor

23  did it file a motion for a protective order.  Therefore, Jupitermedia was required to produce a witness

24  who was knowledgeable on all matters as described in the notice of deposition.  Jupitermedia failed to

25  do so.

26             **1.  JUPITERMEDIA HAS FAILED TO PRODUCE A WITNESS TO TESTIFY AS TO DAMAGES.**

27

28

the arts
and
technology
law group

1    Topic 11,[12] Topic 32,[13] Topic 33[14] and Topic 37[15] are specifically targeted at Jupitermedia's

2    damage claims.  None of these topics requires a legal opinion or is beyond the scope of this litigation;

3    each topic is carefully crafted to obtain information that Jupitermedia should be prepared to provide to

4    Jupiter Hosting, given its extensive damage counterclaims that include "damages for infringement and

5    dilution as proof will show" (Exhibit K to Rutchik Decl. p. 4).  Jupitermedia's witness did not know this

6    information and was either unprepared or stonewalling (see fn 6).

7



**Filed under Seal**

24

25

[12] Value of Jupitermedia's Marks and any increase or decrease thereto, and causes of such increases or decreases
[13] Details of all damages, including but not limited to actual dollar amount and type, to date suffered by Jupitermedia as a result of Jupiter Hosting's actions
[14] Details of all damages, including but not limited to actual dollar amount and type, with regard to Jupitermedia's reputation and good will due to Jupiter Hosting's actions
[15] Details of all damages, including but not limited to actual dollar amount and type, that Jupitermedia alleges Jupitermedia is "entitled to recover" in Jupitermedia's Answer and Counterclaim in this matter

the arts
and
technology
law group

1

2

<div style="border:1px solid #000; text-align:center;">

**Filed under Seal**

</div>

3    Further, Jupitermedia did not fulfill its obligations under Fed. R. Civ. Pro. 26(a)(1)(C) to produce

4    documents and other evidentiary material on which its computation of damages is based.  To date,

5    Jupiter Hosting has not received any documents from Jupitermedia related to its damage claims, nor has

6    Jupitermedia offered to make such documents available.  As it did not comply with 26(a)(1)(C),

7    Jupitermedia should at the very least produce a witness who is knowledgeable about the value of

8    Jupitermedia's "JUPITER" trademarks, any increases and decreases to the value of those trademarks,

9    and the damages it claims it has suffered from Jupiter Hosting's actions.  Jupitermedia should be

10   compelled to produce a witness who is able to testify as to the value of Jupitermedia's "JUPITER"

11   trademarks and the damages Jupitermedia alleges it suffered due to any action of Jupiter Hosting.

12       **2. JUPITERMEDIA HAS FAILED TO PRODUCE A WITNESS TO TESTIFY AS TO ACTUAL CONFUSION.**

13   Topic 17[16] and Topic 25[17] directly address Jupitermedia's allegations that there has been actual

14   confusion due to Jupiter Hosting's use of its "JUPITER HOSTING" trademark.  Although Jupitermedia

15   continues to allege actual confusion, it has not provided any evidence or information that supports those

16   allegations.  In the 30(b)(6) deposition of Jupitermedia Corporation on April 18, 2005, Mitchell

17   Eisenberg disclosed for the first time that the receptionist for Jupitermedia Corporation, Nichole

18   Fratoloni, was a witness who could testify in support of Jupitermedia's allegations of actual confusion

19   (354:4-8).  However, he did not have any specific information as to Ms. Fratoloni's knowledge.

20   Mitchell Eisenberg also had no knowledge as to whether any logs were kept of the alleged calls (see fn

21   3).  This is clearly discoverable information that Jupitermedia cannot withhold from Jupiter Hosting.

22   Further, as Jupitermedia allegations focus on the "eight to ten calls" made to Jupitermedia (Declaration

23   of Michael DeMilt in Support of Jupitermedia's Motion for Preliminary Injunction ¶26), the scope of

24   this topic is narrow.  Jupitermedia should be compelled to produce a witness with knowledge of the

25   matters discussed in the alleged calls, any witnesses to the alleged calls, who the alleged callers were

26   and any logs kept of the alleged calls.

27

28

---

[16] Jupitermedia's evidence of actual confusion between Jupitermedia and Jupiter Hosting
[17] Communications between Jupitermedia and any third party regarding Jupiter Hosting including specifically third parties that use the term "Jupiter" in their business, product or service name

the arts and technology law group

### 3.  Jupitermedia has failed to produce a witness to testify as to third-party use of JUPITER.

Topic 34[18] and Topic 38[19] directly address the strength of Jupitermedia's JUPITER marks, and specifically the concept of a "crowded field."  The concept of a crowded field is central to the instant case.  This Court denied Jupitermedia's Motion for Preliminary Injunction, stating in its order that "Plaintiff has provided substantial evidence suggesting that Defendant's mark has been rendered weak by a crowded field, thus diminishing the likelihood of confusion among consumers.  Defendant therefore has not shown probable success on the merits of its claim under the Lanham Act" (11:25–12:2).

In the 30(b)(6) Deposition of Jupitermedia Corporation on April 18, 2005, Mitchell Eisenberg testified that Jupitermedia Corporation "possibly" has thousands of license agreements with third parties for use of Jupitermedia's trademarks.[20]  If Jupitermedia has entered into trademark license agreements, those would certainly be relevant to the strength of the Jupiter mark and well within the scope of this litigation, and Jupitermedia should produce a witness who is knowledgeable about those license agreements.  Jupitermedia has not produced even a single license.

Mitchell Eisenberg also testified he was not aware whether Jupitermedia Corporation had reviewed the Declaration of Nikia Pinkney in Support of Jupiter Hosting's Opposition to Jupitermedia's Motion for Preliminary Injunction or the entities referred to therein (373:5–10).  The Declaration of Nikia Pinkney cites several entities that use "JUPITER" as trademarks, domain names, and corporate names, all of which would crowd the field of "JUPITER" marks and diminish any possibility of likelihood of confusion between Jupitermedia and Jupiter Hosting.  Therefore, this information would certainly be relevant to the strength of the Jupiter mark and well within the scope of this litigation, and Jupitermedia should produce a witness who is knowledgeable about Jupitermedia's position about the third parties cited by Jupiter Hosting that use the term "Jupiter."

---

## Filed under Seal

the arts
and
technology
law group

**B.** **PLAINTIFF RESERVES ITS RIGHT TO MOVE FOR SANCTIONS IN THE FORM OF REASONABLE ATTORNEYS' FEES AND COSTS.**

Pursuant to Local Rule 37-3, Jupiter Hosting is entitled to sanctions in the form of attorneys' fees and costs. Plaintiff reserves its right to move for sanctions.

**V.    CONCLUSION:**

Discovery abuse here can be cured by compelling additional discovery on narrow topics under the supervision of this Court. Jupitermedia's failure to designate a knowledgeable witness should be rectified. For all of the foregoing reasons, the Court should grant this Motion to Compel and issue the following orders:

1.    Jupitermedia Corporation should be compelled to designate a witness or witnesses knowledgeable on Topics Nos. 11, 17, 25, 32, 33, 34, 37 and 38 as stated in Jupiter Hosting's Notice of Deposition to Jupitermedia Corporation.

2.    Jupitermedia Corporation should be compelled to produce the above-described witness for deposition by Jupiter Hosting in the Northern District of California.

3.    Jupitermedia Corporation should be compelled to produce all documents that compute or evidence its damage claims pursuant to Fed. R. Civ. Pro. 26(a)(1)(C).

4.    Jupitermedia Corporation should be compelled to produce all license agreements for any Jupitermedia trademark that Jupitermedia or its predecessors have entered into with a third party and all other communications in response to Jupiter Hosting's Request for Documents No. 13.

Dated: May 20, 2005                    IDELL, BERMAN, SEITEL & RUTCHIK, LLP


By: _____

Gregory Alan Rutchik, Attorneys for Jupiter Hosting, Inc.

the arts and technology law group