# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jupiter Hosting, Inc., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>Jupitermedia Corporation, a Delaware Corporation,<br><br>    Defendant. | Case No. 04-1820 CW<br><br>**JOINT MEET AND CONFER STATEMENT RE: JUPITER HOSTING'S MOTION TO COMPEL FURTHER 30(b)(6) DEPOSITION PURSUANT TO MAGISTRATE JAMES' STANDING ORDER RE: DISCOVERY**<br><br>**Honorable U.S. Magistrate Judge Maria-Elena James** |

This Joint Meet and Confer Statement is made in accordance with Honorable U.S. Magistrate Judge Maria-Elena James' standing order and relates to a Motion to Compel filed by Jupiter Hosting on May 20, 2005.[1]

## I. UNRESOLVED DISCOVERY DISPUTES

1. Whether Jupitermedia Corporation should be compelled to designate a witness or witnesses knowledgeable on Topics Nos. 11, 17, 25, 32, 33, 34, 35, 37 and 38 as stated in Jupiter Hosting's Notice of Deposition to Jupitermedia Corporation;

2. Whether Jupitermedia Corporation should be compelled to produce the above-described witness for deposition by Jupiter Hosting in the Northern District of California.

## II. JUPITER HOSTING'S POSITION

The issues raised in this statement were initially set out in a timely filed Motion to Compel pursuant to Local Rule 26-2 prior to discovery issues being assigned to Magistrate James.  From the outset of the discovery process, Jupitermedia—the one who has sued Jupiter Hosting for trademark infringement—has stonewalled.  One of its worst offenses was to intentionally designate a witness for its 30(b)(6) deposition who was not knowledgeable about the deposition topics noticed by Jupiter Hosting—the witness did nothing to prepare, made broad statements such as "I believe the trademarks have been damaged" (102:14)[2], could not answer anything more specific, and conceded that the CFO would be better equipped to answer topics on damages (113:1-4).  Somehow Jupitermedia believes it has fulfilled its 30(b)(6) duty by putting up a witness that could not answer one question about the third party usage of the term JUPITER except to say "the company has not" looked at these references but its "lawyers may have." (373:18-374:16)  The standard for a designated 30(b)(6) witness is not simply that such witness be able to testify to the best of his or her ability.  The witness must be prepared to speak on behalf of the company and become knowledgeable about the topics set forth in the notice.  Jupiter Hosting should be able to retake Jupitermedia's 30(b)(6) deposition from knowledgeable witnesses to obtain answers its prior witness was unprepared to answer, and to obtain documents that Jupitermedia has refused to produce.  The deposition should occur in the Northern District so that the Court can be available if any further disputes arise during the deposition.

   A. **Jupitermedia should produce a <u>new</u> 30(b)(6) witness who is knowledgeable on Topics Nos. 11, 17, 25, 32, 33, 34, 35, 37 and 38 as stated in Jupiter Hosting's Notice of Deposition to Jupitermedia Corporation.**

Jupitermedia designated its VP and General Counsel, Mitchell Eisenberg, to appear to testify on behalf of Jupitermedia Corporation on April 18, 2005 in New York City.  This witness was wholly unprepared and did not know the answers to basic questions on topics set forth in the Notice of Deposition (Exhibit A), and described in the deposition transcript (Exhibit B).  It was apparent from the beginning that Eisenberg did not know what he

---

[1] Pursuant to Magistrate James' Standing Order, Gregory Rutchik, on behalf of Jupiter Hosting, and Brandon Fernald, on behalf of Jupitermedia, affirm that they have met and conferred in person in Los Angeles, California on June 2, 2005 at the law offices of Jupitermedia's counsel on the unresolved discovery disputes.

[2] Unless otherwise noted, these numbers refer to page and line numbers of Jupitermedia's testimony in the Fed. R. Civ. Pro. 30(b)(6) deposition of Jupitermedia Corporation, April 18, 2005 (Exhibit B).

1

was supposed to be prepared to know, and Jupitermedia cannot articulate any prejudice that could come from producing a knowledgeable witness.  Because the topics go to the core of this litigation and Jupitermedia's stonewalling denies Jupiter Hosting critical, discoverable information for its defense, Jupitermedia should be compelled to designate a new witness for deposition in the Northern District.  Jupiter Hosting asked Jupitermedia to immediately designate a new witness but was rebuffed.  Jupiter Hosting offered to take a limited deposition on specific topics but was again rebuffed.  Specifically, Jupitermedia intentionally failed in its duty to designate and prepare with regard to:

- **Value of Trademarks and Damages (Topics 11, 32[3], 33, 37):**  Jupitermedia continues to allege that the value of its trademarks has been harmed by Jupiter Hosting, but refused to answer any specific questions on value and its increases and decreases.  Eisenberg spoke to the CFO about the value of trademarks but Eisenberg never prepared to testify about "any decreases in the value that was caused by Jupiter Hosting" in Topic 11. **(111:5-10)** Mr. Eisenberg did not know "whether Jupitermedia was damages in the form of a decrease in revenue" by "any action of Jupiter Hosting" **(91:10-15).**  Jupiter Hosting asked Jupitermedia to produce the CFO, Mr. Baudin, who is clearly better able to testify on these topics **(108:23–109:2; 111-112),** but Jupitermedia has refused. By failing to provide any information on value, Jupitermedia prevents Jupiter Hosting from knowing the true basis of its claims against Jupiter Hosting.

- **Actual Confusion (Topic 17):**  In denying Jupitermedia's Motion for Preliminary Injunction, the Court found Jupitermedia had no evidence of actual confusion, and yet Jupitermedia continues to assert claims of actual confusion in responses to discovery. Jupitermedia claims there is evidence of actual confusion, but refuses to tell us what it is.  In the April 18 deposition, for the first time, Jupitermedia identified a potential new witness to bolster Jupitermedia's claims.  But when asked, "did Ms. Fratoloni tell you everything that she knew with regards to Jupitermedia's evidence of actual confusion between Jupitermedia and Jupiter Hosting?", the witness said "I don't know," and he did not ask her. **(355:15-24).** He did not look for the telephone logs that could evidence this purported confusion **(358:8-12)**.  Jupiter Hosting asked Jupitermedia to certify that no such evidence exists, and Jupitermedia has refused to do so.

- **License Agreements/Documents (Topics 25, 38):**  Mr. Eisenberg admitted for the first time in the 30(b)(6) deposition that Jupitermedia possibly has thousands of not-yet-produced license agreements with third parties for use of the term "Jupiter," but Mr. Eisenberg did not review them, did not know any details about them, and had not reviewed them before the deposition. **(339:17–340:7; 341:16-23)**.  Then, at the meet and confer, Jupitermedia produced only "active" licenses for its trademarks.  Jupitermedia had these documents all along and should have produced them. Jupiter Hosting should have been able to ask about the circumstances around Jupitermedia's practice of trademark licensing but was denied that right because these documents just appeared.  This tactic goes to the core of the Jupitermedia discovery game. After all, if Jupiter Hosting could show that Jupitermedia did not exercise proper control over its trademarks, Jupitermedia's claims would fail. Jupiter Hosting has asked Jupitermedia to produce the head of licensing, Mr. Argenbright, on the topics of these documents, but Jupitermedia has refused.

- **Third-Party Marks (Topics 34, 35):** Jupitermedia's Motion for Preliminary Injunction was denied in part based on the hundreds, if not thousands, of third parties that use the term JUPITER as a business or product name.  In fact, much of Jupitermedia's case rests on the allegation that such third-party uses do not weaken its marks.  Mr. Eisenberg could not answer any question asked about the specific references cited by Jupiter Hosting in its opposition to Jupitermedia's Motion for Preliminary Injunction.  Mr. Eisenberg admitted that he did not look into these references—suggesting that only Jupitermedia's counsel would/should do such a thing—and said he did nothing to prepare to testify on this topic **(373:5–12; 341:16-23)**.  The witness knew nothing more than to point Jupiter Hosting to Jupitermedia's

---

[3] "Topic X" refers to the Topic number identified in Exhibit A, Notice of Deposition.

2

interrogatory responses which the witness himself was unable to testify regarding **(100:20–25)**.

Each and every topic noticed by Jupiter Hosting was described with reasonable particularity and is well within the liberal discovery requirements of Fed. R. Civ. Pro. 26(b)(1). Jupitermedia had an obligation, pursuant to Fed. R. Civ. Pro 30(b)(6), to produce and to prepare a witness who has knowledge of matters described in the notice of deposition. *United States v. Taylor* (MD NC 1996) 166 FRD 196, 201. Jupitermedia had an obligation to prepare Mr. Eisenberg, its designated witness, and to "ensure that such witness [was] adequately prepared to testify, that is, that each witness has reviewed all pertinent documents and is familiar with them." *Detoy v. San Francisco*, 196 F.R.D. 362, 2000 U.S. Dist. LEXIS 13013. Jupitermedia intentionally failed to produce a knowledgeable witness and to prepare that witness. Jupitermedia never moved for a protective order and served only general objections to Jupiter Hosting's Notice of Deposition. Jupitermedia also made continuous objections during the deposition that Jupiter Hosting's questions were beyond the scope of the notice or abusive, which they were not. Further, because Jupitermedia filed its Motion for Preliminary Injunction in San Francisco, against Jupiter Hosting, it should be compelled to produce its Fed. R. Civ. Pro. 30(b)(6) witness here in the Northern District under the watchful eye of this Court. 7-30 <u>Moore's Federal Practice – Civil</u> §30.20 (ii) fn. 8.

**III. JUPITERMEDIA'S POSITION**

A.     **Jupiter Hosting Is Not Entitled to Further Rule 30(b)(6) Testimony.**

Jupiter Hosting noticed the Rule 30(b)(6) deposition of Jupitermedia on or about March 7, 2005. The notice set forth 47 topics of inquiry, most of which were grossly over-broad and duplicative. Counsel for Jupitermedia objected to the scope of the deposition notice and emphasized that it would be impossible to prepare anyone to testify on all of the topics presented. Counsel for Jupiter Hosting refused to narrow the scope of the noticed topics and proceeded with the deposition on April 18, 2005.

Jupitermedia designated Mitchell S. Eisenberg, Vice President and General Counsel of Jupitermedia, to testify on behalf of Jupitermedia. Counsel for Jupiter Hosting proceeded to depose Mr. Eisenberg for approximately nine hours. Counsel's deposition tactics ranged from asking long-winded hypotheticals and refusing to show the witness documents in order to test whether the witness 'remembered' them, to harassing and berating the witness as well as counsel for Jupitermedia. In the end, Mr. Eisenberg testified to the best of his abilities about each of the topics listed. As set forth below, counsel for Jupiter Hosting received all the testimony to which he is entitled under Rule 30(b)(6), and there is no more evidence to be had. Further, if counsel wanted to depose other employees of the company, it had the opportunity to specifically notice those individuals for deposition. It did not do so.

Even if the information sought is relevant, the court may limit the frequency or extent of use of otherwise permissible discovery methods where it determines that the discovery sought is cumulative or duplicative, that the party has had ample opportunity to discovery the information sought, or that the burden or expense of the proposed discovery outweighs its likely benefit. In addition, the court may grant a protective order to limit or prohibit discovery altogether where necessary "to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense. . . ." *In re Applied Micro Circuits Corp. Sec. Lit., Case No. 01cv649, 2003 U.S. Dist. LEXIS 9371, *7 (S.D. Cal. 2003).*

The eight deposition topics on which Jupiter Hosting now demands further testimony can be grouped into four categories (i) damages (11, 32, 33, 37); (ii) enforcement (25, 34, 35); (iii) actual confusion (17) and (iv) licensing agreements (38)[4].

**Damages**

With respect to damages, counsel for Jupiter Hosting questioned Mr. Eisenberg at length about the valuation of Jupitermedia's JUPITER marks and whether the marks had declined in value as a result of Jupiter Hosting's activities. Mr. Eisenberg testified that he spoke with Jupitermedia's Chief Financial Officer regarding the trademark valuation as a result of Jupiter Hosting's activities. (Eisenberg Dep. at 109:7-115:21.) Mr. Eisenberg further testified about how Jupitermedia accounts for the valuation of its trademarks and that Jupitermedia had not booked a specific valuation change with respect to Jupiter Hosting's activities. (Id. at 145:6-153:8, 157:19-158:4) Mr. Eisenberg also testified that the damage caused by Jupiter Hosting's activities was primarily reputational in nature, and that he was not aware of the specific amount of lost revenue attributable to Jupiter Hosting. (Id. at 93:19-96:3.) Finally, Mr. Eisenberg testified that Jupitermedia's then Director of E-Commerce was not aware of any specific monetary damages as a result of Jupiter Hosting's activities. (Id. At 134:6-135:19.)

In sum, Mr. Eisenberg testified to the extent of Jupitermedia's knowledge regarding specific monetary damages resulting from Jupiter Hosting's activities. That Jupitermedia is unaware of specific monetary damages resulting from Jupiter Hosting's activities does not entitle Jupiter Hosting to more deposition testimony on the topic. Additionally, though it is under no obligation to do so, Jupitermedia has in an effort to resolve this dispute offered in writing to conduct one last search for documents relating to specific monetary damages and in the absence of finding any, certifying to Jupiter Hosting that no such evidence exists. That Jupiter Hosting has continued in its efforts to compel further testimony in the face of such an offer speaks volumes about the frivolity of its motion.

**Actual Confusion**

Counsel for Jupiter Hosting is similarly dissatisfied with Mr. Eisenberg's testimony concerning Jupitermedia's evidence of actual confusion. In response to counsel's questions concerning actual confusion, Mr. Eisenberg testified that Jupitermedia had received telephone calls concerning Jupiter Hosting, but that he did not believe that Jupitermedia had any documentary records of the calls. (Id. at 349:17-350:6.)

---

[4] Jupiter Hosting also seeks to take the deposition in San Francisco. The general rule is that the deposition of a corporation by its agents and officers should be taken at the corporation's principal place of business. When a corporation objects to a deposition being taken at a place other than its principal place of business, "the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation." Chris-Craft Indus. Prods., Inc. v. Kuraray Co., 184 F.R.D. 605, 607 (N.D. Ill., 1999). Here, Jupitermedia's principal place of business is in Connecticut. Jupiter Hosting has provided no basis for forcing Jupitermedia to provide a witness in San Francisco to answer the same questions with the responses already elicited by Jupiter Hosting's counsel at Mr. Eisenberg's deposition in New York.

Counsel for Jupiter Hosting has now decided to focus on Mr. Eisenberg's testimony that he was unsure whether or not Jupitermedia's receptionist had kept a log of any such calls, (Id. at 353:19-356:12), as a reason why Jupiter Hosting should be able to re-depose Jupitermedia. Again, Mr. Eisenberg's response that he was unsure whether a log had been kept is an appropriate response, which may not be used to subject Jupitermedia to further testimony on the subject. Further, Jupitermedia has since offered in writing to conduct one final search for relevant documents concerning actual confusion, and if none are found to certify to Jupiter Hosting that no such evidence exists.[5]

**Enforcement**

According to counsel for Jupiter Hosting at the meet and confer, he is primarily concerned with Mr. Eisenberg's lack of knowledge with respect to the declaration of Nikia Pinkney, which Jupiter Hosting filed in opposition to Jupitermedia's Motion for Preliminary Injunction in this case. The declaration purports to list companies and websites which use the term "Jupiter" in relation to their activities. In response to questions about the Pinkney declaration, Mr. Eisenberg responded that while its lawyers may have researched the companies mentioned in the declaration, Jupitermedia had not done so in detail. (Id. at 373:5-374:16.) Unsatisfied with this response, counsel for Jupiter Hosting demands that Jupitermedia prepare a witness to testify about each of the companies referenced in the Pinkney declaration. Rule 30(b)(6) entails no such obligation. Further, Jupitermedia is entitled to rely on its counsel's review of any such companies, and may not be forced to testify about its communications with counsel concerning said companies. Jupiter Hosting is entitled to no further testimony on this point.

**Licensing Agreements**

Mr. Eisenberg testified that Jupitermedia had entered into a number of licensing agreements concerning third party uses of its marks. (Id. at 339-342.) Significantly, Mr. Eisenberg did not distinguish between the license agreements involving the Jupiter MARKs, and those involving other trademarks. Regardless, Mr. Eisenberg was under no obligation to review each and every license agreement Jupitermedia had ever entered into so as to be able to testify about it. Further, Jupitermedia has since searched for and produced active license agreements concerning the Jupiter MARKS and continues to search for others. Jupiter Hosting is entitled to no further testimony on this point. Finally, Jupiter Hosting never even requested the production of licensing agreements in its discovery.

Dated: June 28, 2005          IDELL BERMAN SEITEL & RUTCHIK, LLP

By:_____/s/_____
        Gregory Alan Rutchik
        Attorneys for Jupiter Hosting, Inc.

---

[5] Jupiter Hosting also fails to mention that it has already deposed Mike Demilt, an employee of Jupitermedia who took all of the calls at issue.

| | |
|---|---|
| Dated: June 28, 2005 | FULBRIGHT & JAWORSKI L.L.P. |
| | By:_____/s/_____ |
| | John Rawls |
| | Sarah Silbert |
| | Brandon Fernald |
| | Attorneys for Jupitermedia Corporation |

6