Gregory Alan Rutchik, Esq. #195423
IDELL, BERMAN, SEITEL & RUTCHIK, LLP
the arts and technology law group
465 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259

Roy S. Gordet #103916
Attorney at Law
98 Battery Street, Suite 601
San Francisco, CA 94111
Telephone: (415) 627-0300
Facsimile: (415) 627-9020

Attorneys for Plaintiff
Jupiter Hosting, Inc., a Delaware Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jupiter Hosting, Inc., a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Jupitermedia Corporation, a Delaware Corporation,<br><br>    Defendant. | Case No.: 04-1820 CW<br><br>NOTICE OF DEPOSITION OF JUPITERMEDIA CORPORATION PURSUANT TO FED. R. CIV. PRO. 30(b)(6) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD,

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. Pro. 30(b)(6), on April 18, 2005, at 9 o'clock a.m. EST, at the law offices of Adam Perlmutter, 260 Madison Avenue, 20th Floor, New York, NY 10016, Plaintiff will take depositions upon oral examination by stenographic means and videotape of the person(s) listed below. If necessary, each deposition will be continued from day to day or be adjourned until completed.

Jupitermedia Corporation is hereby requested and required, pursuant to F.R.C.P. 30(b)(6), to

NOTICE OF DEPOSITION OF JUPITERMEDIA CORPORATION PURSUANT TO FED. R. CIV. PRO. 30(b)(6) - 1

designate and produce a person or persons to testify on behalf of Jupitermedia Corporation ("Jupitermedia") on the following matters:

1. Jupitermedia Corporation's and its predecessor's ("Jupitermedia") trademarks and service marks that include the term "JUPITER" ("Marks") and the use and date of first use of each of these Marks
2. Jupitermedia's plans or intent to expand into the field of Web hosting services
3. Jupitermedia's application and registration of trademarks that incorporate or comprise the term "JUPITER" including US and worldwide
4. Jupitermedia Corporation's plans for expansion into areas of business that are new and/or related to its current business
5. Jupitermedia Corporation's decision to publish information on the web hosting industry
6. Jupitermedia's domain names selection, registration and maintenance
7. Jupitermedia's assertion that it possesses a "family of Marks"
8. Jupitermedia's enforcement of its "family of Marks" world-wide
9. Jupitermedia's business decisions to enforce and prosecute its Marks
10. Value of Jupitermedia's Marks as reflected in the Jupitermedia Consolidated Balance Sheets for the year ending December 31, 2004, filed on or about February 15, 2005 with the Securities and Exchange Commission
11. Value of Jupitermedia's Marks and any increase or decrease thereto, and causes of such increases or decreases
12. All of Jupitermedia's claims and defenses set forth in the pleadings that Jupitermedia has filed in this matter
13. Jupitermedia's allegations that there is a likelihood of confusion created by Jupiter Hosting's use of the mark JUPITER HOSTING in connection with its marketing and sale of Web hosting services
14. Jupitermedia's allegations that there is a likelihood of confusion created by Jupiter Hosting's use of the domain name <jupiterhosting.com> in connection with its sale of Web hosting services

15. Jupitermedia's allegations that Jupiter Hosting has violated the Anticybersquatting Protection Act
16. Jupitermedia's allegations that Jupiter Hosting has created initial interest confusion
17. Jupitermedia's evidence of actual confusion between Jupitermedia and Jupiter Hosting
18. Jupitermedia's assertions related to Jupiter Hosting's establishing, transferring and maintaining domain names, including but not limited to assertions made in the Declaration of Mark Berns in Support of Jupitermedia's Motion for Preliminary Injunction
19. Jupitermedia's experience in registering domain names, transferring domain names and changing DNS server information
20. Jupitermedia's assertion that the public perceives a relationship between the services of Jupitermedia and Jupiter Hosting
21. Jupitermedia's allegations that any and all trademarks owned by Jupitermedia that contain or comprise JUPITER are not weakened by the presence of the "several dozen companies in California and several dozens more in New York" described in the Order Denying Defendant's Motion for A Preliminary Injunction in this matter
22. Jupitermedia's allegations that any and all Marks owned by Jupitermedia have been weakened by any act of Jupiter Hosting
23. Jupitermedia's monitoring of any and all trademarks owned by Jupitermedia
24. Communications between Jupitermedia and the US Patent and Trademark Office regarding Jupiter Hosting
25. Communications between Jupitermedia and any third party regarding Jupiter Hosting including specifically third parties that use the term "Jupiter" in their business, product or service name
26. Surveys conducted by Jupitermedia to determine the likelihood of confusion between any third party (including Jupiter Hosting) and Jupitermedia
27. Jupitermedia's communications with the Microsoft Corporation related to Microsoft's use of the term "Jupiter" in any product or service launch
28. Jupitermedia's evidence of actual confusion as alleged in paragraph 9 of Jupitermedia's Counterclaim

29. All instances in which Jupitermedia (or any predecessor entity) has asserted that a likelihood of confusion exists between a "Jupitermedia Mark" (as such term is defined in Jupitermedia's Answer and Counterclaim in this matter at paragraph 2) and a trademark, service mark or domain name of a third party

30. Any or all cease and desist letters or demands received by Jupitermedia related to any "Jupitermedia Mark" (as such term is defined in Jupitermedia's Answer and Counterclaim in this matter at paragraph 2)

31. Allegations, and Jupitermedia's bases for allegations, that Jupiter Hosting has acted in bad faith or with the bad faith intent to profit from its use of JUPITER HOSTING

32. Details of all damages, including but not limited to actual dollar amount and type, to date suffered by Jupitermedia as a result of Jupiter Hosting's actions

33. Details of all damages, including but not limited to actual dollar amount and type, with regard to Jupitermedia's reputation and good will due to Jupiter Hosting's actions

34. The effect of each reference identified in Nikia Pinkney's Declaration, Exs. 1-29 on the strength of the "Jupitermedia Marks" (as such term is defined in Jupitermedia's Answer and Counterclaim in this matter at paragraph 2)

35. Steps taken by Jupitermedia to assert trademark rights against third parties including those identified in the Nikia Pinkney Declaration, Ex. 1-29

36. Jupitermedia's actions with regard to any third party related to use of the term "JUPITER" with any product or service, including but not limited to writing cease and desist letters and following up on cease and desist letters sent

37. Details of all damages, including but not limited to actual dollar amount and type, that Jupitermedia alleges Jupitermedia is "entitled to recover" in Jupitermedia's Answer and Counterclaim in this matter

38. Any license agreements for use of any trademark owned by Jupitermedia between Jupitermedia and a third party

39. Monitoring and review of uses of any and all Marks by any predecessor of Jupitermedia

40. Jupitermedia Corporation's initial disclosures

41. All responses served by Jupitermedia Corporation on Jupiter Hosting to discovery propounded to Jupitermedia Corporation, including but not limited to Jupiter Hosting's Request for Production of Documents, Set 1 and Special Interrogatories, Set 1

42. All documents served by Jupitermedia Corporation on Jupiter Hosting in response to discovery propounded to Jupitermedia Corporation, including but not limited to Jupiter Hosting's Request for Production of Documents, Set 1, Jupiter Hosting's Request for Production of Documents, Set 2 and Special Interrogatories, Set 1

43. Jupitermedia's seminar that was given on choosing a Web hosting company, as indicated in JM0538.

44. Jupitermedia's custom research reports, including but not limited to, how Jupitermedia's customers order custom research reports and to whom those reports are distributed

45. Jupitermedia's non-customized research, including but not limited to how topics for such research are chosen and how such research is funded

46. All periods of non-use of the mark JUPITER on those goods and services identified in Reg. No. 2157968 and the reasons the mark was not used during those periods

47. All correspondence concerning Reg. No. 2157968 and the mark JUPITER, internal to the Company or to others outside the company.

Dated: April 11, 2005             IDELL, BERMAN, SEITEL & RUTCHIK, LLP


                                  By:_____/s/_____
                                  Gregory Alan Rutchik, Attorneys for Jupiter Hosting, Inc.